Those sustained by the libellant, Edwards, depend upon estimation by the court. The bills of the hospital and physician in attendance, must be allowed, and amount to $90. Then, according to precedents, I am to fix the amount of damages due—1st. For pain and suffering. 2nd. For loss of time and earnings while actually disabled; and 3rd. for the loss likely to accrue as the permanent consequences of the injury, on the principles stated in my decision in Dunstan v. The R. R. Kirkland [Case No. 4,181]. I estimate the amount due for pain and suffering, which were very severe, at $500. I also, on like considerations to those then stated, estimate the actual loss in wages and earnings during the season during which Edwards was laid up, at $500. And I estimate the loss likely to be the consequence in the future of the diseased condition of his ankle at $500. I will give a decree for an aggregate of $1,-590.

## Case No. 4,296.

### EDWARDS v. NICHOLS.

[Brunner, Col. Cas. 43;[1] 3 Day, 16.]

Circuit Court, D. Connecticut. 1808.

Ingersoll and Staples, for defendant,

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

Daggett and Bristol, for plaintiff.

Daggett and Bristol, for plaintiff.

Daggett and Bristol, contra.

W. G. Smith, for libellants.
W. W. Hubbell and Mr. Ashmead, for respondent.

RANDALL, District Judge. The libel alleges that the sloop Centurion was, on the 11th March last, lying safely and properly moored at the wharf in Delaware City, and within the admiralty and maritime jurisdiction of this court, when the steamer R. F. Stockton approached with great speed, and that, notwithstanding tne master of the Centurion held a light upon the outside of his vessel, and hailed the steamer in a loud voice, requesting her to keep off, she ran into the sloop with great force and violence, striking the Centurion on the starboard bow and cutting her down to the water's edge, otherwise injuring her, and reducing the value of her cargo, which was thus prevented from being brought to Philadelphia as soon as it otherwise would have been.

A claim and answer has been filed by Henry L. Gaw, who states that on the 1st May, 1845, and prior to the filing the libel in this cause, he purchased the Stockton without any notice or knowledge of the said alleged collision, and that, being a bona fide purchaser without notice, the steamer is not liable in his possession for any injury she may have done previously to his said purchase. The answer also denies that the collision was occasioned by the fault or negligence of those on board the steamer; alleging that, if any injury was sustained by the Centurion, it was caused solely by the fault and negligence of those on board the sloop in not having proper lights exhibited, and in her being moored in an improper place in the channel or entrance to the Chesapeake and Delaware Canal.

Assuming, for the purposes of this case, that the purchase by Mr. Gaw was bona fide, and without notice of this collision, the question arises whether the steamer remains liable, in his possession, for the damage occasioned by her; supposing her to have been in fault? It is true that the master and owner of an offending vessel may be personally liable for the damages occasioned by the negligence or misconduct of such master, or of those in

LIVINGSTON, Circuit Justice, overruled the motion in arrest, and ordered judgment to be entered.

## Case No. 4,297.

EDWARDS v. The ROBERT F. STOCKTON.

[Crabbe, 580.] [1]

District Court, E. D. Pennsylvania. July 17, 1845.

[1] [Reported by William H. Crabbe, Esq.]